The opinion .of the Court was delivered by
Wardlaw, J.
This case is important to the prisoner, and every case of homicide is important to the State. Although the appeal appears, upon examination, to bring under review little besides the verdict which the jury has rendered upon the evidence, we will notice, with care befitting the occasion, *346 the particulars of misdirection, about which much has been , said in the argument. The complaints amount in substance to a criticism upon the Judge’s CHARGE, as it was reported in a newspaper, and they undertake to show that one word was not the best that might have been' selected, that greater completeness might have been given to certain definitions, that this remark ought to have been introduced; and that one omitted: — not that any thing was said by which the jury could have been misled to the disadvantage of the prisoner.
First. Legal provocation is supposed not to be a proper technical expression, as every sufficient provocation must be something illegal. Judge Gaston in the case of the State vs. Will, 1 Dév. & Bat. No. Ca. Rep., 168, says — “ some causes of passionate excitement are termed ‘legal provocations,’while others have been declared not to be ‘ legal provocations.’ This must not be understood to mean that a man has a legal right to be provoked, but only that the law regards certain offensive acts as • provocations, while it refuses to consider others as such. The latter, though provocations in common parlance are not provocations in a legal sense, and therefore not comprehended in the legal phrase, legal provocations.”
This phrase may be found in the text of other accurate writers, as in 1 East’s P. 0. 238, 242.
In the case before us, the Judge, speaking in reference to a homicide effected by a deadly weapon, so defined voluntary manslaughter, as to require that sudden heat and passion should not only exist, but be excited by “ sufficient legal provocation,” — “ be justly excited by legal provocation.” No doubt was left, that the meaning was to require a provocation of that kind‘which the law"deems necessary to mitigate to manslaughter the guilt of a party, who upon such provocation has slain a human creature by the use of a deadly weapon; and to require, further, that such provocation should be somewhat proportionate to the punishpient inflicted, or, as *347 it is often expressed, should be reasonably sufficient. There is no doubt that this was a just exposition of the law, and it would not be easy to select a more suitable phrase, to express the required provocation so as to guard against vulgar error than that of “ sufficient legal provocation.”
In the report which has been laid before us, professing to be a mere summary, taken without the aid of a stenographer, “ deliberation” and “ sufficient .legal provocation” are, respectively made to characterize murder and manslaughter; and using the terms in a strict technical sense, this is correct. But deliberation must be understood to mean, not slowness and composure as distinguished from suddeness and excitement, but freedom from the temporary phrenzy, excited by sufficient legal provocation, as distinguished from that phrenzy which the law allows to moderate its rigor in pity to human frailty. A voluntary act, which is without sufficient legal provocation, is deliberate, no matter how sudden or how furious it may be. If, according to the popular acceptation of terms, deliberation should be required to* constitute murder, but every exciting provocation should be held of itself sufficient to mitigate a homicide to manslaughter, many of the most wanton and atrocious murders' would escape deserved punishment. This prisoner has no’ right to complain of the definitions as reported. '
SECOND. ' Nothing was said to the jury about character. The ordinary observations would have been made, if the omission had been called to the mind of the Judge, but nothing was said to oppose or weaken what had -been-urged’ to the jury on this head by the prisoner’s counsel.. Character was one of the circumstances found in the evidence bearing, upon the main facts of the case. What comments a Judge shall in his summing up make upon facts, must be in a great measure left to his own discretion, when he has properly warned the jury of-their-province and responsibility. His *348 mere omission of a topic, which, another would have dwelt on, cannot be complained of, unless it amounts to a misstatement ; and even then an opportunity to correct the omission should be afforded by a suggestion from those who being present, think that they suffer from it, unless it appears to be intentional and not inadvertent.
In this case the character of the accused could have been only remotely influential. That he had the reputation of being sober, industrious and ordinarily peaceable, is consistent with Ms extreme violence on a special occasion, as the sad experience of our Courts tob often shows. That he was “ rather a coward, moré disposed to run than fight,” might, according to different views and circumstances, make more or less probable, his unnecessary perpetration of a bloody deed.
Third. Complaint is made that the Judge, after bringing to the notice of the jury the discrepancies, between the testimony of the witnesses on the part of the State given in Court, and their depositions taken by the Coroner, and after repeating what the Coroner had testified concerning -his manner of taking the depositions, and after leaving the jury to judge of the matter, said that “ evidence was often loosely taken, and perhaps no very great weight should be given to these discrepancies.”
The general observation, as applicable to the manner in which testimony is often taken and written down by persons who act as Coroners, is lamentably true. The Coroner’s office is one which occasionally requires a high degree of intelligence, skill and accuracy, but generally its duties are performed in a most perfunctory manner. Often the report of testimony; which is returned with an inquisition super visum corporis, is worse than useless — deficient in the information which it should give, and serving only to perplex witnesses and protract the trial, by the tedious references *349 wbioli in examination and argument are usually made to it. Plain men in narrating, generally omit many things which, skilful advocates would extract from them by examination and cross-examination; the interruptions occasioned by an attempt on the part of an ordinary writer, to write down every word used by a witness, makes the narrative more bungling and confused; an attempt to condense the testimony without interrupting the witness, gives widely different results from the hands of different writers, according to various abilities and habits of mind and body, even when the writers are practised in the business: when the writer is inexperienced and the witness is ignorant, there is small assurance that the writing read over and acknowledged, contains even the substance of what was deposed.
But in this case it is said that the writing was carefully done by a competent person, and that the discrepancies are not omissions, but contradictions. The remark of the Judge did not then do more than make a doubtful suggestion to the jury, of matter which should enter into their consideration in weighing the effect of these discrepancies. There was no withdrawing from the jury of any thing in the evidence on the subject, and a much more decided expression of the Judge’s opinion would have been no interference with the right of the jury to decide the facts submitted to them.
If the Coroner was correct, these discrepancies seem to show that there was some ground for distrusting the two principal witnesses on the part of the State. If they had been confidently relied on, the verdict according to the opinion of the Judge, should have been guilty of murder.
Could it have been less than manslaughter, if they were wholly disbelieved as to every thing in- which they were not corroborated by the evidentia re\ or other witnesses ? The death of the deceased, caused by a knife in the hand of the prisoner, is established beyond reasonable doubt. If then Fuller Smith’s account is taken to be, in all respects, correct, *350 there was a killing with a deadly weapon upon sufficient legal provocation, but much must be conjectured to maké that killing an act of excusable self-defence. How could the prisoner have had reasonable grounds for believing that he stood in such imminent danger of death or of great bodily harm, as to require the use of the knife, — that most dangerous and most treacherous of all instruments — in the dark, and without one cry of fear, or word of warning, when so easily he could have avoided the conflict ? But we will not comment on the testimony. The jury have decided that the case was not one of self-defence, and in that opinion we entirely coincide.
The motion is dismissed.
O’Neall, Withers, Whither, and MuNro, JJ., concurred.

Motion dismissed.